Carolyn H. Cottrell (SBN 166977)
David C. Leimbach (SBN 265409)
Michelle S. Lim (SBN 315691)
Scott L. Gordon (SBN 319872)
SCHNEIDER WALLACE
COTTRELL KONECKY LLP
2000 Powell Street, Suite 1400
Emeryville, California 94608
Telephone: (415) 421-7100
Facsimile: (415) 421-7105
ccottrell@schneiderwallace.com
dleimbach@schneiderwallace.com
mlim@schneiderwallace.com
sgordon@schneiderwallace.com

*[Additional Counsel listed on next page]*

Attorneys for Plaintiffs and the Settlement
Classes and Collective

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HAROLD JONES, et al.,<br><br>Plaintiffs,<br><br>vs.<br><br>CERTIFIEDSAFETY, INC.<br><br>Defendants. | **Lead Case No. 3:17-cv-02229-EMC**<br>Consolidated with 3:17-cv-03892-EMC (*Crummie*)<br>Related to: 3:18-cv-04379-EMC (*Ross*)<br>3:19-cv-01338-EMC (*Jones II*)<br>3:19-cv-01380-EMC (*Jones III*)<br>3:19-cv-01381-EMC (*Jones IV*)<br>3:19-cv-01427-EMC (*East*)<br>3:19-cv-01428-EMC (*Jones V*)<br><br>**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT**<br><br>Date: May 28, 2020<br>Time: 1:30 p.m.<br>Courtroom: 5 (17th Floor)<br>Judge: Honorable Edward M. Chen<br><br><br>*Jones* Complaint filed: April 21, 2017 |

1  Edwin Aiwazian (SBN 232943)
   Arby Aiwazian (SBN 269827)
2  Jill J. Parker (SBN 274230)
   LAWYERS FOR JUSTICE, PC
3  410 West Arden Avenue, Suite 203
   Glendale, California 91203
4  Telephone: (818) 265-1020
   Facsimile: (818) 265-1021
5
6  Attorneys for Plaintiffs and the Settlement Classes and Collective

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

TO THE HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

NOTICE IS HEREBY GIVEN that on May 28, 2020, at 1:30 p.m. in Courtroom 5 before Hon. Edward M. Chen of the United States District Court, Northern District of California, Plaintiffs Harold Jones, Tierre Crummie, Genea Knight, Sandra Turner, George Azevedo, Jr., Marcellous Ross, and Michael East ("Plaintiffs") move the Court for final approval of the Stipulation of Class, Collective, and Representative Action Settlement, as amended (the "Settlement Agreement" or the "Settlement"), in these consolidated and related actions.[1] The Settlement globally resolves all of the claims in these actions on a class and collective basis. In particular, Plaintiffs move for orders:

(1)     Granting final approval of the Settlement Agreement as to the California, Washington, Minnesota, Illinois, Ohio, and Alaska Classes;

(2)     Certifying the California, Washington, Minnesota, Illinois, Ohio, and Alaska Classes for settlement purposes;

(3)     Finally approving Plaintiffs Jones, Crummie, Ross, and East as Class Representatives for the California Class; Plaintiffs Jones and Knight as Class Representatives for the Washington Class; Plaintiff Jones as Class Representative for the Minnesota Class; Plaintiff Jones as Class Representative for the Illinois Class; Plaintiff Turner as Class Representative for the Ohio Class; and Plaintiff Azevedo as Class Representative for the Alaska Class; and all Plaintiffs as Collective Representatives;

(4)     Finally approving Schneider Wallace Cottrell Konecky LLP as Class and Collective Counsel;

(5)     Finally approving payment of $70,000 from the Settlement to the Settlement Administrator, Heffler Claims Group, as compensation for administering the Settlement;

(6)     Finally approving the following implementation schedule; and

| Effective Date | The latest of: (i) if no appeal is filed, the expiration date of the time for filing or noticing any appeal of the judgment (*i.e.*, 30 days from the entry of judgment); (ii) if there is an appeal of the Court's judgment, |
|---|---|

---

[1] The Settlement was previously filed at ECF 206-2, and was modified by the Amendment filed at ECF 215-2. The Settlement was already preliminarily approved by this Court on January 22, 2020. *See* ECF 216.

| | |
|---|---|
| | the date of dismissal of such appeal, or the expiration of the time to file a petition for writ of certiorari to the United States Supreme Court; or (iii) if a petition for writ of certiorari is filed, the date of denial of the petition for writ of certiorari, or the date the judgment is affirmed pursuant to such petition. |
| Deadline for Heffler Claims Group to calculate the employer share of taxes and provide CertifiedSafety with the total amount of CertifiedSafety's Payroll Taxes | Within 7 days after Effective Date |
| Deadline for CertifiedSafety to pay the Gross Settlement Amount into the Qualified Settlement Account | Within 14 days after Effective Date |
| Deadline for CertifiedSafety to deposit the amount of CertifiedSafety's Payroll Taxes | Within 14 days after Effective Date |
| Deadline for Heffler Claims Group to make payments under the Settlement to Participating Individuals, the LWDA, Class Representatives, Plaintiffs' counsel, and itself | Within 30 days after the Effective Date |
| Check-cashing deadline | 180 days after issuance |
| Deadline for Heffler Claims Group to report to counsel for all Parties the number of and amount of uncashed checks | 14 days after check-cashing deadline |
| Deadline for redistribution of uncashed check funds to those Class Members who cashed their Individual Settlement Payment checks, or transfer to the *cy pres* recipient | 21 days after report from Heffler Claims Group regarding uncashed checks |
| Deadline for Heffler Claims Group to provide written certification of completion of administration of the Settlement to counsel for all Parties and the Court | As soon as practicable after redistribution of uncashed check funds to those Class Members who cashed their Individual Settlement Payment checks, or transfer to the *cy pres* recipient |

(7)     Entering a final judgment with the terms of the Settlement.

Plaintiffs bring this Motion pursuant to Federal Rule of Civil Procedure 23(e). The Motion is based on this notice, the following Memorandum of Points and Authorities, the Declaration of Carolyn Hunt Cottrell, and all other records, pleadings, and papers on file in this action and such other evidence or argument as may be presented to the Court at the hearing on this Motion. Plaintiffs will also submit a Proposed Order Granting Final Approval of Settlement and a Proposed Judgment with their moving papers.

1

2   Date: April 23, 2020                          Respectfully submitted,

3

4                                                 */s/ Carolyn Hunt Cottrell*
                                                  Carolyn Hunt Cottrell
5                                                 David C. Leimbach
                                                  Michelle S. Lim
6                                                 Scott L. Gordon
                                                  SCHNEIDER WALLACE
7                                                 COTTRELL KONECKY LLP

8
                                                  Attorneys for Plaintiffs and the Settlement Classes and
9                                                 Collective

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................... 1

II.    FACTUAL BACKGROUND ..................................................................................... 2

III.   PROCEDURAL HISTORY ....................................................................................... 4

       A.    Plaintiffs' Claims ............................................................................................ 4

       B.    FLSA Conditional Certification ..................................................................... 6

       C.    Consolidation and Relation of Actions .......................................................... 7

       D.    Discovery ........................................................................................................ 8

       E.    Mediation ........................................................................................................ 9

       F.    Preliminary Approval ..................................................................................... 9

       G.    Notice of Settlement and Response of Class Members ................................ 10

       H.    Final Approval of the Settlement ................................................................. 12

IV.    TERMS OF THE SETTLEMENT .......................................................................... 12

       A.    Basic Terms and Value of the Settlement .................................................... 12

       B.    Class and Collective Definitions .................................................................. 13

       C.    Allocation and Awards ................................................................................. 14

       D.    Scope of Release and Final Judgment .......................................................... 17

V.     ARGUMENT ........................................................................................................... 18

       A.    Ninth Circuit Precedent Favors and Encourages Class Settlements ............ 18

       B.    The Court Should Finally Approve the Settlement ...................................... 19

             1.    The best practicable notice was provided to the Class Members in
                   accordance with the process approved by the Court ......................... 20

             2.    The terms of the Settlement are fair, reasonable, and adequate ....... 21

             3.    The Parties have agreed to distribute settlement proceeds tailored to the
                   Classes and Collective and their respective claims .......................... 22

             4.    The extensive discovery enabled the Parties to make informed decisions
                   regarding settlement .......................................................................... 23

             5.    While Plaintiffs recognize the strength of their claims, there are substantial
                   risks in proceeding with the litigation .............................................. 24

             6.    The settlement is the product of informed, non-collusive, and arm's-length
                   negotiations between experienced counsel. ...................................... 25

7.   Class Members approve of the Settlement.....................................................26

C.   The Class Representative Service Awards are Reasonable ...................................26

D.   The Requested Attorneys' Fees and Costs are Reasonable ..................................27

E.   The Court Should Finally Certify the California, Washington, Illinois, Minnesota, Alaska, and Ohio Classes ......................................................................................27

1.   The Classes are numerous and ascertainable. ...............................................28

2.   Plaintiffs' claims raise common issues of fact or law....................................28

3.   Plaintiffs' claims are typical of the claims of the Classes. ............................29

4.   Plaintiffs and Class Counsel will adequately represent the Classes. .............29

5.   The Rule 23(b)(3) requirements for class certification are also met. ...........29

VI.    CONCLUSION ................................................................................................. 30

1

## <u>TABLE OF AUTHORITIES</u>

2

3 **Federal Cases**

4 *Amchem Prod., Inc. v. Windsor*

5     521 U.S. 591 (1997)................................................................................................30

6 *Balderas v. Massage Envy Franchising, LLP*

7     2014 WL 3610945 (N.D. Cal. July 21, 2014).................................................................21

8 *Bellinghausen v. Tractor Supply Co.*

9     306 F.R.D. 245 (N.D. Cal. 2015).......................................................................22

10 *Boyd v. Bechtel Corp.*

11     485 F.Supp. 610 (N.D. Cal. 1979)......................................................................23

12 *Carter v. Anderson Merchandisers, LP*

13     No. EDCV 08-0025-VAP OPX, 2010 WL 1946784 (C.D. Cal. May 11, 2010).........................26

14 *Churchill Village, L.L.C. v. Gen. Elec.*

15     361 F.3d 566 (9th Cir. 2004) ......................................................................20

16 *Cody v. Hillard*

17     88 F.Supp.2d 1049 (D.S.D. 2000) ..................................................................26

18 *Eddings v. Health Net, Inc.*

19     No. CV 10-1744-JST RZX, 2013 WL 3013867 (C.D. Cal. June 13, 2013)...............................24

20 *Franklin v. Kaypro Corp.*

21     884 F.2d 1222 (9th Cir. 1989) ....................................................................18

22 *Fry v. Hayt, Hayt & Landau*

23     198 F.R.D. 461 (E.D. Pa. 2000)..............................................................28, 29

24 *Grunin v. Int'l House of Pancakes*

25     513 F.2d 114 (8th Cir. 1975).....................................................................20

26 *Guilbaud v. Sprint Nextel Corp.*

27     No. 3:13-CV-04357-VC, 2016 WL 7826649 (N.D. Cal. Apr. 15, 2016) ....................................19

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

*Hanlon v. Chrysler Corp.*

   150 F.3d 1011 (9th Cir. 1998) ...................................................................................... 18, 25, 29

*Holmes v. Continental Can Co.*

   706 F.2d 1144 (11th Cir. 1983) ................................................................................................ 23

*Ikonen v. Hartz Mountain Corp.*

   122 F.R.D. 258 (S.D. Cal. 1988) .............................................................................................. 28

*In re Am. Bank Note Holographics, Inc.*

   127 F.Supp.2d 418 (S.D.N.Y. 2001) ......................................................................................... 26

*In re AT & T Mobility Wireless Data Services Sales Tax Litigation*

   789 F.Supp.2d 935 (N.D. Ill. 2011) ......................................................................................... 23

*In re AutoZone, Inc., Wage & Hour Employment Practices Litig.*

   289 F.R.D. 526 (N.D. Cal. 2012) ............................................................................................. 25

*In re Mego Financial Corp. Sec. Litig.*

   213 F.3d 454 (9th Cir.2000) ..................................................................................................... 21

*In re Syncor ERISA Litig.*

   516 F.3d 1095 (9th Cir. 2008) .................................................................................................. 20

*In re Warfarin Sodium Antitrust Litig.*

   212 F.R.D. 231 (D. Del. 2002) ................................................................................................. 21

*In re Washington Pub. Power Supply Sys. Sec. Litig.*

   720 F. Supp. 1379 (D. Ariz. 1989) .......................................................................................... 22

*Kilbourne v. Coca-Cola Co.*

   No. 14CV984-MMA BGS, 2015 WL 5117080 (S.D. Cal. July 29, 2015) .................................. 25

*Langford v. Devitt*

   127 F.R.D. 41 (S.D.N.Y. 1989) ................................................................................................ 20

*Lewis v. Starbucks Corp.*

   No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) .......................... 23

iv

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

*Linney v. Cellular Alaska P'ship*

   151 F.3d 1234 (9th Cir. 1998) ......................................................21

*Ma v. Covidien Holding, Inc.*

   2014 WL 360196 (C.D. Cal. Jan. 31, 2014) ......................................21

*Mandujano v. Basic Vegetable Products, Inc.*

   541 F.2d 832 (9th Cir. 1976) ..................................................20, 26

*Monterrubio v. Best Buy Stores, L.P.*

   291 F.R.D. 443 (E.D. Cal. 2013) ................................................23

*Murillo v. Pacific Gas & Elec. Co.*

   266 F.R.D. 468 (E.D. Cal. 2010) ................................................27

*O'Connor v. Uber Techs., Inc.*

   No. 13-cv-03826-EMC, 2019 U.S. Dist. LEXIS 157070 (N.D. Cal. Sep. 13, 2019) ...................19

*Officers for Justice v. Civil Serv. Comm'n*

   688 F.2d 615 (9th Cir. 1982) ........................................18, 19, 21, 27

*Rinky Dink Inc. v. Elec. Merch. Sys. Inc.*

   No. C13-1347 JCC, 2015 WL 11234156 (W.D. Wash. Dec. 11, 2015)......................22

*Romero v. Producers Dairy Foods, Inc.*

   235 F.R.D. 474 (E.D. Cal. 2006) ................................................28

*Soto, et al. v. O.C. Communications, Inc., et al.*

   Case No. 3:17-cv-00251-VC, ECF 304-305 (N.D. Cal. Oct. 23, 2019) ................16, 19

*Staton v. Boeing Co.*

   327 F.3d 938 (9th Cir. 2003) ....................................................19

*Stovall-Gusman v. W.W. Granger, Inc.*

   2015 WL 3776765 (N.D. Cal. June 17, 2015)......................................21

*Torrisi v. Tucson Elec. Power Co.*

   8 F.3d 1370 (9th Cir. 1993) ....................................................20

*Viceral v. Mistras Grp., Inc.*

 No. 15-cv-02198-EMC, 2017 U.S. Dist. LEXIS 23220 (N.D. Cal. Feb. 17, 2017) ............... 19, 21

*Vikram v. First Student Mgmt., LLC*

 No. 17-CV-04656-KAW, 2019 WL 1084169 (N.D. Cal. Mar. 7, 2019) ...................................... 21

*Wang v. Chinese Daily News, Inc.*

 737 F.3d 538 (9th Cir. 2013) ............................................................................................ 28, 30

*Wren v. RGIS Inventory Specialists*

 No. C-06-05778 JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011) ..................................... 20, 25

*York v. Starbucks Corp.*

 No. CV 08-07919 GAF PJWX, 2011 WL 8199987 (C.D. Cal. Nov. 23, 2011) .......................... 25

**State Cases**

*7-Eleven Owners for Fair Franchising*

 85 Cal.App.4th 1135 (2000) ................................................................................................ 21

*Am. Motorcycle Assn. v. Superior Court*

 20 Cal.3d 578 (1978) .......................................................................................................... 25

**Rules**

Fed.R.Civ.P. 23(a) ............................................................................................ 18, 28, 29

Fed.R.Civ.P. 23(b) ............................................................................................................ 29

Fed.R.Civ.P. 23(e) ..................................................................................................... 18, 19

**Other Authorities**

Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed Class Action Settlement*

 § 21.61 (4th ed. 2004) ....................................................................................................... 18

## I. INTRODUCTION

Plaintiffs seek final approval of the Settlement[1] in these class and collective actions (the "Actions") brought on behalf of current and former Safety Attendants and Safety Foremen for Defendant CertifiedSafety, Inc. ("Defendant" or "CertifiedSafety"). Plaintiffs allege that CertifiedSafety and certain of its oil refinery clients violated federal, California, Washington, Minnesota, Illinois, Ohio, and Alaska labor laws by failing to pay Safety Attendants and Safety Foremen for all of their work, failing to provide them meal and rest periods, and failing to reimburse them for work-related expenses. The Settlement provides an exceptional recovery to resolve these workers' claims and brings closure to three years of intensive litigation, including pleading challenges, numerous amendments to the complaints, conditional certification, the filing of a series of related actions to allege additional state law and joint employer claims against Defendant's oil refinery clients, two separate mediations, and extensive arm's-length negotiations between counsel.

The Settlement provides for a non-reversionary Gross Settlement Amount of $6,000,000 to settle the wage and hour claims for approximately 2,481 Class Members.[2] In resolving the claims for six Rule 23 Classes and an FLSA Collective comprised of 429 Opt In Plaintiffs, the Settlement provides an excellent recovery for numerous wage and hour claims unlikely to have been prosecuted as individual actions. In particular, the average recovery for each of the 2,481 Class Members is approximately $1,514.35 per Class Member—an exceptional amount considering that the typical Class Member worked a relatively short tenure.[3] As the Class Members' Individual

---

[1] The "Settlement" or Settlement Agreement" refers to the Stipulation of Class, Collective, and Representative Action Settlement, as amended, filed at ECF 206-2 (Amendment filed at ECF 215-2).

[2] Plaintiffs and members of the Classes and Collective are referred to hereafter as "Class Members" or "Safety Attendants" for ease of reading.

[3] This amount divides the **net** recovery by the total number of discrete Class Members. The total number of Class Members was reported as 3,050 in Plaintiffs' motion for preliminary approval. That figure simply added together the numbers of Class Members in each of the six Rule 23 Classes and the number of Collective Members who were not part of any Rule 23 Class, and incorporated a projected amount of additional Class Members to account for the period from the second mediation (when the Class data was provided) to the date of filing of the preliminary approval motion. As the Class Members work assignments for CertifiedSafety all over the country, numerous Class Members are part of more than one Rule 23 Class, and these persons were double counted in the

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

Settlement Shares are based on their number of Workweeks, long-term Safety Attendants will receive larger recoveries under the Settlement. 68 Class Members will receive in excess of $10,000, six Class Members will receive over $20,000, and the largest recovery is an impressive $26,205.20. Class Members are paid $40.97 for each FLSA-Only Workweek under the Settlement. With the weighting factors discussed herein, Class Members are paid, *inter alia*, twice that ($81.94) for each Washington Workweek, and three times that ($122.91) for each California Workweek.[4] Thus, the Settlement provides well over $1,000 to a Class Member with just nine Workweeks in California.

The Court granted preliminary approval of the Settlement as to the California, Washington, Minnesota, Illinois, Ohio, and Alaska Classes and approval of the Settlement as to the Collective on January 22, 2020. *See* ECF 216. Following the Court's approval, notice of the Settlement was sent to the Class Members via U.S. Mail, email, and text message on February 19, 2020. At this time, no objections have been filed and no Class Members have opted out of the Settlement. Four Class Members submitted disputes regarding their number of Workweeks.

Given the strong recovery and that the Settlement will provide significant monetary payments to laborers with modest incomes in the midst of an economic downturn, Class Counsel respectfully submits that the Court should approve the Settlement forthwith. By any measure, the Settlement provides a great benefit to the Classes and Collective and an efficient outcome in the face of expanding litigation. It is fair, reasonable, and adequate in all respects. Accordingly, as set forth herein, Plaintiffs respectfully submit that the Settlement should be finally approved.[5]

## II. FACTUAL BACKGROUND

CertifiedSafety serves the oil refinery industry, providing its clients with personnel who specialize in planning, implementing, and executing safety protocols at refinery operations. Cottrell

---

initial estimate of 3,050. With the benefit of the comprehensive Class information provided by Defendant for settlement administration, the final tally of discrete Class Members is 2,481.
[4] The majority of the Workweeks covered by the Settlement are California Workweeks. The weighting factors recognize that the stronger wage and hour laws of certain states would result in enhanced recoveries compared to states with no wage and hour protections beyond the FLSA.
[5] In a separate motion filed on April 23, 2020, Plaintiffs seek approval of an award of attorneys' fees, costs, and service awards for the Named Plaintiffs. Pursuant to the Northern District of California's Procedural Guidance for Class Action Settlements, this brief does not repeat that request nor the corresponding background information set forth in the fee, cost, and service award motion.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

Decl. ¶ 8. Its clients are oil refinery operators in the United States, including but not limited to Chevron, Andeavor/Tesoro, Phillips 66, Citgo, United Refining, and Shell.[6] *Id.* CertifiedSafety's Safety Attendants and Safety Foremen, who are classified as non-exempt employees, carry out these safety duties at refinery operations throughout the United States, including in California, Washington, Minnesota, Illinois, Ohio, Alaska, and numerous other states. *Id.* ¶ 9. They provide support for the refinery companies' operations and protocols, including identifying, mitigating, and reporting potential safety hazards at their assigned worksites. *Id.*

Plaintiffs allege that Class Members—who work long and difficult hours, often far away from their homes—experience wage and hour violations in their work with CertifiedSafety, and with the refineries as alleged joint employers. *Id.* ¶ 10. In particular, Plaintiffs allege that the Class Members experience significant amounts of pre- and post-shift off-the-clock work, that the Class Members cannot take timely, full, off-duty meal and rest periods, and that they are not adequately reimbursed for travel, lodging, and other expenses. *Id.* ¶ 11. As a result of these alleged violations, Plaintiffs allege that Defendants systematically violate the Fair Labor Standards Act, as well as California, Washington, Minnesota, Illinois, Ohio, Alaska labor law, by: (1) not paying Class Members proper minimum and overtime wages for work performed off-the-clock on a daily basis, as well as uncompensated training days; (2) failing to provide Class Members with a reasonable opportunity to take meal and rest periods, and failing to compensate Class Members when such meal and rest periods are not taken; (3) failing to reimburse necessarily-incurred expenses; and (4) failing to issue accurate, itemized wage statements.

Plaintiffs allege that, as joint employers, CertifiedSafety and the refinery Defendants are jointly liable for the violations at issue. Defendants have at all times denied, and continue to deny, all of these allegations, including Plaintiffs' theory that CertifiedSafety and the refinery Defendants are joint employers, and deny any and all liability for Plaintiffs' claims. Defendants further deny that Plaintiffs' allegations are appropriate for class/collective and/or representative treatment for any purpose other than for settlement purposes only.

---

[6] Each of these refinery operators has been named as a Defendant on a joint employer basis in the Actions. CertifiedSafety and these refinery operators are collectively referred to as "Defendants."

1

2

### III. PROCEDURAL HISTORY

#### A.    Plaintiffs' Claims

3      Plaintiff Harold Jones filed the first lawsuit in the Actions against CertifiedSafety on April

4  1, 2017. ECF 1.[7] In his initial complaint, Plaintiff Jones alleged that CertifiedSafety violated the

5  Fair Labor Standards Act ("FLSA") and the wage and hour laws of California by failing to pay non-

6  exempt employees their earned wages, failing to provide legally compliant meal and rest periods,

7  and failing to reimburse for work-related expenditures. On this basis, Plaintiff Jones brought claims

8  against CertifiedSafety on behalf of a putative FLSA collective and a putative California class, and

9  for civil penalties under the California Labor Code Private Attorneys General Act ("PAGA").

10      Plaintiff Tierre Crummie filed *Crummie* in the Superior Court of California, County of

11  Alameda, on April 24, 2017. Plaintiff Crummie brought similar claims against CertifiedSafety

12  under the wage and hour laws of California on behalf of a putative California class and for civil

13  penalties under the PAGA. CertifiedSafety removed *Crummie* to the United States District Court

14  for the Northern District of California on July 10, 2017. *Crummie* ECF 1.

15      Plaintiff Jones filed his First Amended Complaint ("FAC") in *Jones* on June 26, 2017,

16  which added Plaintiff Genea Knight as an additional representative plaintiff. ECF 23. Plaintiff

17  Knight brought similar claims against CertifiedSafety, under the wage and hour laws of Washington

18  on behalf of a putative Washington class, in addition to FLSA claims. *Id*. Defendant moved to

19  dismiss Plaintiffs' FAC on July 24, 2017, primarily on *Iqbal/Twombly* grounds. ECF 31. That

20  motion was denied in large part, and Defendant filed its Answer on September 18, 2017. ECF 39,

42.

21      On February 8, 2018, pursuant to the parties' stipulation, Plaintiffs Jones and Knight filed

22  their Second Amended Complaint to assert additional claims under the California Labor Code, re-

23  assert a California waiting time penalty claim, and to proffer additional factual allegations relating

24  to CertifiedSafety's mandatory training. ECF 100. On July 18, 2018, Plaintiff Marcellous Ross filed

25  *Ross* against CertifiedSafety, Chevron, Valero Energy Corporation, and Valero Refining Company-

26  California. Plaintiff Ross alleged similar wage and hour claims against these Defendants, on behalf

27

28

---

[7] Unless otherwise indicated, ECF docket designations refer to docket entries in Lead Case No.
3:17-cv-02229-EMC.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

of a putative FLSA collective and a putative California class. *Ross*, ECF 1. Plaintiff Ross agreed to voluntarily dismiss Valero Energy Corporation and Valero Refining Company-California via stipulation on September 12, 2018. *See Ross* ECF 30.

In late-2018, Plaintiffs filed a motion for leave to file a Third Amended Consolidated Complaint in *Jones*, and a motion for leave to file a First Amended Complaint in *Ross*. ECF 164; *Ross* ECF 58, 64. The proposed amendments would have significantly expanded both the *Jones* and *Ross* actions, by adding Michael East and George Azevedo, Jr., as additional Named Plaintiffs and Class Representatives; joint employer allegations against CertifiedSafety's oil refinery clients including but not limited to Shell, Andeavor, Phillips 66, and Citgo; and additional Rule 23 classes and state law causes of action under Alaska, Illinois, and Minnesota law.[8] *Id*. The Court granted the motions in part on February 20, 2019, declining to permit the addition of the refinery defendants and the additional state law claims, but permitting smaller-scale amendments. ECF 172; *Ross* ECF 87.

Plaintiffs filed their Third Amended Consolidated Complaint ("TAC") in *Jones* and their operative First Amended Complaint in *Ross* (*Ross* FAC) on March 6, 2019. ECF 176; *Ross* ECF 91. CertifiedSafety answered the TAC and the *Ross* FAC on March 20, 2019. ECF 177; *Ross* ECF 87. Chevron filed a motion to dismiss the *Ross* FAC on March 20, 2019, which was fully briefed at the time the Parties reached an agreement to settle the case.[9] *See Ross* ECF 93, 95, 97, 101.

Plaintiffs then proceeded to file new actions to bring the wage and hour claims, including those under Illinois and Minnesota law, against CertifiedSafety and refineries on a joint employer basis:

- Plaintiff Jones filed *Jones II* (Case No. No. 3:19-cv-01338-EMC) on March 12, 2019, which alleges similar wage and hour claims under the FLSA, California, Washington, and Minnesota law against CertifiedSafety and Andeavor/Tesoro on behalf a putative FLSA collective and

---

[8] Plaintiffs had previously noticed a motion in *Jones* on May 15, 2018 to obtain leave for these proposed amendments via filing of a Third Amended Complaint, but the Court denied the motion without prejudice on October 26, 2019 in order for the Parties to delineate lead plaintiff and lead counsel responsibilities. *See* ECF 129, 149.
[9] The Parties agreed to continue the hearing on Chevron's motion to dismiss pending the settlement process. *See Ross* ECF 101.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

putative California, Washington, and Minnesota classes.

• Plaintiff Jones filed *Jones III* (Case No. 3:19-cv-01380-EMC) on March 14, 2019, which alleges similar wage and hour claims under the FLSA, California, and Washington law against CertifiedSafety and Phillips 66 on behalf a putative FLSA collective and putative California, and Washington classes.

• Plaintiff Jones filed *Jones IV* (Case No. 3:19-cv-01381-EMC) on March 14, 2019, which alleges similar wage and hour claims under the FLSA, California, and Illinois law against CertifiedSafety and Citgo on behalf a putative FLSA collective and putative California and Washington classes.

• Plaintiff Michael East filed *East* (Case No. 3:19-cv-01427-EMC) on March 18, 2019, which alleges similar wage and hour claims under the FLSA and California law against CertifiedSafety and United Refining on behalf a putative FLSA collective and a putative California class.

• Plaintiff Jones filed *Jones V* (Case No. 3:19-cv-01428-EMC) on March 18, 2019, which alleges similar wage and hour claims under the FLSA, California, and Washington law against CertifiedSafety and Shell on behalf a putative FLSA collective and putative California, and Washington classes.

At the time of mediation, Plaintiffs and Class Counsel intended to file additional actions to bring wage and hour claims under Ohio and Alaska law on behalf of putative Ohio and Alaska classes. Cottrell Decl. ¶ 14. As a result of the Settlement, the Parties agreed that Plaintiffs would amend the operative complaint in *Jones* to add (1) Sandra Turner and George Azevedo, Jr. as Named Plaintiffs and Class Representatives, and (2) Ohio and Alaska law wage and hour claims, brought by Turner and Azevedo, respectively, individually and on behalf of putative Rule 23 Ohio and Alaska classes. *See* Settlement Agreement, ¶¶ 3.20, 5.1.1. The Ohio and Alaska Classes incorporate class periods that extend back three years from the April 23, 2019 mediation. *See* Settlement Agreement, ¶¶ 2.46. The resulting Fourth Amended Complaint was filed on January 24, 2020. ECF 218.

### B.  FLSA Conditional Certification

The Parties stipulated to conditional certification of the FLSA Collective in *Jones*, which

was granted on October 24, 2017. ECF 47. CertifiedSafety brought a motion to strike untimely and deficient opt-in forms on March 14, 2018, which Plaintiffs opposed. ECF 113, 116, 119. The Court granted the motion with respect to opt-in forms filed after the initial January 23, 2018 mediation, and with respect to unsigned opt-in forms, but otherwise denied the motion. *See* ECF 128. Safety Attendants have also filed opt-in forms in the *Ross* action. Cottrell Decl. ¶ 15. In the final tally, 429 Individuals, including the Named Plaintiffs, opted in to *Jones*, *Ross*, or both. *Id.*

### C. Consolidation and Relation of Actions

On February 16, 2018, CertifiedSafety moved to have the *Jones* action consolidated with *Crummie*, or in the alternative, to stay *Crummie*. ECF 103. Plaintiffs Jones and Knight opposed this motion, primarily on first-filing grounds and the status of *Jones* as involving a conditionally-certified FLSA collective in addition to a putative California Class. *See* ECF 106. Plaintiffs Jones and Knight filed a motion to appoint their attorneys, Schneider Wallace Cottrell Konecky LLP, as interim lead counsel on March 21, 2018. ECF 115.

On May 15, 2018, the Court issued an order consolidating *Jones* with *Crummie*. ECF 128. This order also denied without prejudice the motion to appoint interim lead counsel on prematurity grounds, as the actions has not yet been consolidated. *Id*. On November 5, 2018, following the Court's order directing the Parties to delineate lead counsel responsibilities, Plaintiffs in *Jones* and *Crummie* stipulated to appoint Schneider Wallace Cottrell Konecky Wotkyns LLP as lead counsel on behalf of the Plaintiffs and putative Class and Collective Members in *Jones* and *Crummie*.[10] ECF 149, 152.

On October 30, 2018, Plaintiffs filed a notice of related cases and administrative motion to relate the *Ross* action to the consolidated *Jones/Crummie* action. ECF 150. The Court issued a related case order, finding the actions related, on November 16, 2018. ECF 157. On May 10, 2019, Plaintiffs filed a notice of related cases and administrative motion to relate the *Jones II, Jones III, Jones IV, East,* and *Jones V* actions to the consolidated *Jones/Crummie* action. ECF 186. The Court issued related case orders, finding the actions related, on May 15 and May 17, 2019. ECF 192, 195. All of the Actions are currently pending before the Honorable Edward M. Chen.

---

[10] Lawyers for Justice, PC remains actively involved in the litigation of the Actions.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1

### D.  Discovery

2     The Parties have engaged in extensive discovery, including written discovery and

3  depositions. On January 10, 2018, Plaintiffs deposed CertifiedSafety's Rule 30(b)(6) designee, Vice

4  President of Human Resources Steve Hines. Cottrell Decl. ¶ 18. The deposition addressed topics

5  including Defendant's corporate organization and decision-making responsibilities; its policies,

6  practices, procedures, and systems for wage and hour issues, compensation, timekeeping, and

7  scheduling; relevant investigations and reports; and the Class Members' job duties and

8  responsibilities, the tools, equipment and gear that they use, and any work that they perform outside

9  of their scheduled shifts. *Id.* The deposition also covered topics relating to Plaintiffs' joint employer

10  claims; Plaintiffs proffered excerpts along this line in support of their motion for preliminary

11  approval. *Id.*; *see* ECF 211-2. Defendant took the depositions of Plaintiff Jones and Plaintiff Knight

12  on January 15, 2018, and Plaintiff Crummie on January 11, 2018. *Id.* ¶ 19.

13     Plaintiffs' counsel have additionally completed extensive outreach with Class Members,

14  including over 240 in-depth intakes. *Id.* ¶ 20. The intakes covered topics including dates and

15  locations of work, hours of work, pre-shift and post-shift off-the-clock work, meal and rest breaks,

16  and reimbursement of work-related expenses. *Id.* Through the outreach process, Plaintiffs garnered

17  substantial factual background regarding the alleged violations and the joint employer claims,

18  which Plaintiffs' counsel utilized to build their case and proffer detailed allegations in the operative

19  complaints. *Id.* ¶ 21; *see e.g.* ECF 218. Multiple Class Members that completed intakes provided

20  additional documents to Plaintiffs' counsel. *Id.*

21     CertifiedSafety has additionally produced over 1,400 documents, including its general

22  policies as well as time records, payroll records, and job assignment documents applicable to

23  Plaintiffs Jones, Knight, and Crummie. *Id.* ¶ 22. CertifiedSafety also provided classwide figures,

24  including the total number of class members, number of shifts worked, average hourly rates, and

25  additional data points, ahead of each mediation, to enable Plaintiffs' counsel to evaluate damages

26  on a Class and Collective basis. *Id.* This discovery was produced on an informal basis to facilitate

27  mediation, and updated ahead of each mediation. *Id.*

28

1

2

### E.  Mediation

Plaintiffs and CertifiedSafety first mediated this dispute on January 23, 2018 before Jeff Ross, a respected and experienced wage and hour mediator. Cottrell Decl. ¶ 23. This initial mediation was unsuccessful, and litigation continued in the ordinary course, including the filing of the later actions and service of formal discovery requests. *Id*. On April 23, 2019, the Plaintiffs and CertifiedSafety participated in a second mediation session with Paul Grossman, another highly respected and experienced wage and hour mediator. *Id*. ¶ 24. The session lasted some 10 hours; at the end of the night, Mr. Grossman issued a mediator's proposal, which contained the essential terms of the instant Settlement. *Id*. All Parties accepted the proposal on that date. *Id*.

Throughout the mediation process, the Parties engaged in serious and arm's-length negotiations, culminating in the mediator's proposal. *Id*. ¶ 25. After the mediation, counsel for the Parties worked to finalize the proposed long-form Settlement and corresponding notice documents, subject to the Court's approval. *Id*. As the Settlement is complex, involving hybrid Rule 23 and FLSA claims, numerous Defendants, and the resolution of eight separate actions as well as two additional potential actions, the drafting process was lengthy. After an initial draft was completed, six sets of subsequent edits were required to arrive at an agreement that was acceptable to all Parties and counsel, along with a separate drafting and revision process for the Class, Collective, and Class/Collective Notices. *Id*. ¶ 26. Counsel for the Parties advised the Court of the status of the drafting process, culminating in a stipulation that set finalized deadlines for the completion of the Settlement Agreement and filing the instant motion. *See* ECF 197, 199, 201, 202, 203. The Settlement Agreement was fully executed on November 21, 2019.

### F.  Preliminary Approval

Plaintiffs filed their preliminary approval motion on November 22, 2019. *See* ECF 206. The Parties also filed a stipulation on that date for leave to file the proposed Fourth Amended Consolidated Class and Collective Action Complaint, which added the Ohio and Alaska law claims brought by Plaintiffs Turner and Azevedo, respectively, individually and on behalf of putative Ohio and Alaska classes. *See* ECF 204. Thereafter, the Court issued an Order on December 12, 2019

directing Plaintiffs to file supplemental briefing on several issues.[11] *See* ECF 210. Plaintiffs filed the supplemental briefing and evidence on December 19, 2019, including revised Notices of Settlement that incorporated the Court's recommended changes. ECF 211. The Court also directed the Parties to be prepared to address the Ninth Circuit's decision in *Roe v. SFBSC Mgmt., LLC*, No. 17-17079, 2019 U.S. App. LEXIS 36638 (9th Cir. Dec. 11, 2019) at the preliminary approval hearing. *See* ECF 212.

At the preliminary approval hearing on January 8, 2020, the Court discussed the Settlement with Class Counsel and Defendant's counsel, with emphasis on the damages analysis, the manner in which notice would be disseminated to Class Members, and the treatment of uncashed check funds. *See* ECF 213, 214. The Parties agreed to incorporate notice via text message, in addition to notice via U.S. Mail and email, and to modify the handling of uncashed check funds so that any such monies would be redistributed to those Class Members who cashed their checks. *Id.* The Court issued an order conditionally granting preliminary approval, provided that the Parties made these changes to the Settlement, on January 13, 2020. *See* ECF 214. The Parties executed the Amendment to the Settlement on January 20, 2020, and filed it with the Court on that date. *See* ECF 215, 215-2. The Court issued its Order as Modified Granting Plaintiffs' Motion for Preliminary Approval of Class and Collective Action Settlement on January 22, 2020. ECF 216.

### G.  Notice of Settlement and Response of Class Members

Heffler Claims Group ("Heffler") is responsible for distributing the Notices of Settlement, calculating individual settlement payments, calculating all applicable payroll taxes, withholdings and deductions, preparing and issuing all disbursements to be paid to Class Members, the Class Representatives, Class Counsel, the LWDA, any applicable local, state, and federal tax authorities, and handling inquiries and/or disputes from Class Members. Cottrell Decl. ¶ 31. Heffler is also responsible for the timely preparation and filing of all tax returns, and making the timely and accurate payment of all necessary taxes and withholdings. *Id.* Heffler established a case website,

---

[11] These issues included the damages analysis for the California PAGA claim; the inclusion in the California class of Safety Attendants who completed pre-employment training in California; the distribution of uncashed check funds to state unclaimed property departments, as originally proposed by the Parties; the discovery taken as to refineries; the estimated lodestar of Class Counsel; and recommended changes to the Notices of Settlement.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1    http://www.certifiedsafetysettlement.com/, which provides Settlement documents and information

2    and allows for the submission of electronic inquiries. *Id*. ¶ 32. Heffler also established a toll-free

3    call center to field questions, address updates, and other inquiries from Class Members. *Id*.

4        Following the Court's order, Heffler received the Class List from CertifiedSafety on

5    February 5, 2020. Cottrell Decl. ¶ 33. The data contained the names, last known mailing addresses,

6    last known personal email addresses, Workweeks in each of the various jurisdictions, and other

7    personal information for 2,481 Safety Attendants. Heffler sent the Notices of Settlement to these

8    workers on February 19, 2020 via U.S. Mail, and via email and text message to all email addresses

9    and telephone numbers available for the Safety Attendants. As emails were sent to over 2,515 email

10   addresses and text messages were sent to 3,890 phone numbers, robust electronic notice was

11   disseminated in addition to hard copy notice.[12] *Id*.

12       In order to include such information on the Notices, Heffler first calculated the Individual

13   Settlement Shares for every Safety Attendant using the Workweek data provided by

14   CertifiedSafety. Cottrell Decl. ¶ 34. The Notices informed the Class Members of: the Settlement

15   terms; their expected share; the April 20, 2020 deadline to submit objections, requests for

16   exclusions, or disputes; the May 28, 2020 final approval hearing; and that Plaintiffs would seek

17   attorneys' fees, costs, and service awards and the corresponding amounts. *Id*.; see also ECF 215-2.

18   Heffler included the URL for the case website, the toll-free call center number, and the names and

19   contact information for Class Counsel in the Notices of Settlement. *Id*.

20       As of April 17, 2020, 287 hard-copy Notices have been returned to Heffler as undeliverable.

21   *Id*. ¶ 35. Heffler performed skip-tracing and other techniques to identify current addresses, and 206

22   Notices were successfully re-mailed. *Id*. Out of 2,515 email Notices sent, 166 were undeliverable,

23   and out of 3,890 text message Notices sent, 580 were undeliverable. 81 hard-copy notices remain

24   undelivered after remailing. *Id*. The deadline for Class Members to opt-out, object, and dispute their

25   reported Workweeks expired April 20, 2020.[13] *Id*.

26

---

27   [12] CertifiedSafety had multiple email addresses and multiple phone numbers for certain Safety
     Attendants.

28   [13] Three days prior to the end of the notice period, on April 17, 2020, Defendant's counsel informed
     Class Counsel of an error in the Class List data that it provided to Heffler. *Id*. ¶ 36. Specifically, the

To date, with the notice period complete, not a single objection has been filed and not a single Class Member has opted out of the Settlement. *Id.* ¶ 37. Moreover, only four Class Members have disputed the Workweek figures reported in their Notices.[14] *Id.* None of the disputes allege that the Workweeks were improperly credited to the respective Rule 23 states. *Id.* Plaintiffs will file a declaration from Heffler regarding notice administration in advance of the final approval hearing. Following final approval of the Settlement, Heffler will issue checks to the Class Members. *Id.*

### H.  Final Approval of the Settlement

The Final Approval Hearing is currently scheduled for May 28, 2020. With this Motion, Plaintiffs ask the Court to grant final approval of this Settlement as to the California, Washington, Illinois, Minnesota, Alaska, and Ohio Classes. The Court should grant final approval at that time given the substantial recovery realized by all Class and Collective members, and the globally positive reaction of these Safety Attendants. Following an order by the Court on this Motion, the Parties and the Settlement Administrator will execute the final steps of the settlement process, including sending individual checks to all participating Class Members for their Individual Settlement Shares.

## IV. TERMS OF THE SETTLEMENT

### A.  Basic Terms and Value of the Settlement

CertifiedSafety has agreed to pay a non-reversionary Gross Settlement Amount of $6,000,000 to settle all aspects of the case. Cottrell Decl. ¶ 40. The Net Settlement Amount, which is the amount available to pay settlement awards to the Class Members, is defined as the Gross

---

Class List incorrectly stated the number of Workweeks for FLSA Opt In Plaintiffs who were also Rule 23 Class Members. *Id.* For these persons, the Class List stated that all of their Workweeks were FLSA-Only Workweeks. *Id.* As a result, the Class Members' estimated recoveries have been modified, with some Class Members receiving more than initially stated, and others receiving less. In no event will a Class Member's recovery decrease by more than 11.9% from the estimated recovery provided in the Notice of Settlement. Importantly, the Notices of Settlement state that the reported Individual Settlement Payment amount "is an estimated amount, and your final Settlement payment is expected to differ from this amount (i.e., it could be higher or lower) and will be calculated as set forth above."

[14] The disputes have been resolved following the gathering of additional data and information by Defendant for each dispute and meet and confer. *Id.* ¶ 38. All of the disputes have been rejected. *Id.* Notably, two disputes were rejected because the union Safety Attendant position, which is subject to a collective bargaining agreement, is not within the purview of the Settlement. *Id.*

1  Settlement Amount less: the payment made to the California Labor & Workforce Development

2  Agency ("LWDA") pursuant to PAGA ($50,000)[15]; any enhancement payments awarded to the

3  Class Representatives (up to $15,000 for Plaintiffs Jones, Knight, and Crummie; up to $10,000 for

4  Plaintiffs Ross and East; and up to $5,000 for Plaintiffs Azevedo and Turner); the Settlement

5  Administrator's fees and costs ($70,000)[16]; and any attorneys' fees and costs awarded to Plaintiffs'

6  counsel (fees of one-third of the Gross Settlement Amount, or $2,000,000, plus costs in the amount

7  of $60,397.73)[17]. *Id.*

8       The negotiated non-reversionary Gross Settlement Amount of $6,000,000 represents more

9  than 53% of the approximately $11.3 million that Plaintiffs calculated for the core unpaid wages

10 claims. *Id.* ¶ 42. When adding meal and rest break, derivative claims, and potential penalties, the

11 $6,000,000 million settlement amount represents approximately 13.3% of Defendants' total

12 potential exposure of $45.2 million. *Id.* The cash-in-hand recoveries that Class Members will

13 receive compare favorably to these theoretical maximums. *Id.* ¶ 43. The average recovery is

14 $1,514.35 per each of the 2,481 Class Members (this amount divides the *net* recovery by total

15 number of Class Members). *Id.* 68 Class Members will receive in excess of $10,000, six Class

16 Members will receive over $20,000, and the largest recovery is an impressive $26,205.20. *Id.* Class

17 Members are paid $40.97 for each FLSA-Only Workweek under the Settlement; with the weighting

18 factors, Class Members are paid, *inter alia*, twice that ($81.94) for each Washington Workweek,

19 and three times that ($122.91) for each California Workweek.[18] *Id.*

20    **B. Class and Collective Definitions**

21       An individual is eligible to share in the proposed Settlement if he or she belongs to any of

22

23 ─────────────────────────────

24 [15] The Parties agree to allocate $50,000.00 of the Gross Settlement Amount to the settlement of the PAGA claims, which the Parties believe in good faith is a fair and reasonable apportionment. *Id.* The Settlement Administrator shall pay 75%, or $37,500.00, of this amount to the LWDA, and 25%, or $12,500.00, shall remain as part of the Net Settlement Amount. *Id.*

25 [16] Heffler's finalized costs are $70,000 for this complex and intricate settlement administration project. This increased slightly from the $66,000 estimate provided in Plaintiff's preliminary approval motion. *Id.*

26 [17] The finalized attorneys' costs are $60,397.73, a decrease from the $70,000 estimate provided in Plaintiff's preliminary approval motion. *Id.*

27 [18] Again, the majority of the Workweeks covered by the Settlement are California Workweeks.

28

1  the following[19]:

2  ▪ The "**California Rule 23 Class**" means all current or former Safety Attendants and Safety

3  Foremen employed by CertifiedSafety, or who attended pre-employment training conducted by

4  CertifiedSafety, in the State of California at any time from April 21, 2013 to the date of

5  Preliminary Approval.

6  ▪ The "**Washington Rule 23 Class**" means all current or former Safety Attendants and Safety

7  Foremen employed by CertifiedSafety in the State of Washington at any time from April 21, 2014

8  to the date of Preliminary Approval.

9  ▪ The "**Minnesota Rule 23 Class**" means all current or former Safety Attendants and Safety

10  Foremen employed by CertifiedSafety in the State of Minnesota at any time from March 12, 2016

11  to the date of Preliminary Approval.

12  ▪ The "**Illinois Rule 23 Class**" means all current or former Safety Attendants and Safety Foremen

13  employed by CertifiedSafety in the State of Illinois at any time from March 14, 2016 to the date of

14  Preliminary Approval.

15  ▪ The "**Ohio Rule 23 Class**" means all current or former Safety Attendants and Safety Foremen

16  employed by CertifiedSafety in the State of Ohio at any time from April 23, 2016 to the date of

17  Preliminary Approval.

18  ▪ The "**Alaska Rule 23 Class**" means all current or former Safety Attendants and Safety Foremen

19  employed by CertifiedSafety in the State of Alaska at any time from April 23, 2016 to the date of

20  Preliminary Approval.

21  ▪ **Opt-In Plaintiffs** are all Safety Attendants and Safety Foremen on whose behalf Plaintiffs'

22  counsel has filed a consent to join the FLSA collective in any of the Actions, before the date of

23  Preliminary Approval.

24  ### C.  Allocation and Awards

25  The Net Settlement Amount to be paid to Class Members is approximately $3,757,102.27.

26  Cottrell Decl. ¶ 45. Class Members will each receive a settlement award check without the need to

27

28  [19] The Rule 23 Classes mirror the class definitions in the operative complaints. They are to be certified for settlement purposes only under Federal Rule of Civil Procedure 23.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

submit a claim form.[20] *Id.* ¶ 46. Each Class Member's settlement share will be determined based on the total number of weeks that the respective Class Member worked for Defendants during the applicable limitations period(s). *Id.* ¶ 41. Specifically, each Class Member will be credited for the number of weeks that he or she worked for CertifiedSafety at any time (1) from April 21, 2013 to the date of Preliminary Approval for California Class Members; (2) from April 21, 2014 to the date of Preliminary Approval for Washington Class Members; (3) from March 12, 2016 to the date of Preliminary Approval for Minnesota Class Members; (4) from March 14, 2016 to the date of Preliminary Approval for Illinois Class Members; (5) from April 23, 2016 (i.e., the mediation date) to the date of Preliminary Approval for Ohio Class Members; (6) from April 23, 2016 (i.e., the mediation date) to the date of Preliminary Approval for Alaska Class Members; and (7) if the Participating Individual is an Opt In Plaintiff, in all states other than California, Washington, Minnesota, Illinois, Alaska, and Ohio, from the three years preceding the date that Plaintiffs' counsel filed a Consent to Join form on behalf of the Opt In Plaintiff to the date of Preliminary Approval. Settlement Agreement, ¶ 4.13.2.1.

Each Workweek will be equal to one settlement share, but to reflect the increased value of state law claims and differing average rates of pay by state, Workweeks during which work was performed in California, Washington, Minnesota, Illinois, Ohio, and Alaska will be weighted more heavily. Specifically, Workweeks during which work was performed in California (including Workweeks in which a Participating Individual attended pre-employment training conducted by CertifiedSafety in California) will be equal to three settlement shares; Workweeks during which work was performed in Washington or Alaska will be equal to two settlement shares; Workweeks during which work was performed in Minnesota will be equal to 1.7 settlement shares; Workweeks during which work was performed in Illinois will be equal to 1.3 settlement shares; Workweeks

---

[20] Class Members are not required to submit an Opt-In Form to receive payment under the Settlement for their work in California, Washington, Minnesota, Illinois, Ohio, and Alaska during the relevant time periods. However, only Opt In Plaintiffs will be credited for work in other states, as the damages for work in those states are attributable to FLSA claims only. Class Members may opt out of the Rule 23 component of the Settlement, but those who are Opt-In Plaintiffs may not opt out of the FLSA component of the Settlement. Settlement Agreement, ¶ 4.9.2.

during which work was performed in Ohio will be equal to 1.1 settlement shares; and Workweeks during which an Opt In Plaintiff performed work in any state other than California, Washington, Alaska, Minnesota, Illinois, and Ohio will be equal to one settlement share.[21] Settlement Agreement, ¶ 4.13.2.2.

The total number of settlement shares (as weighted) for all Participating Individuals will be added together and the Net Settlement Amount will be divided by that total to reach a per share dollar figure. Settlement Agreement, ¶ 4.13.2.4. The resulting per share dollar figure will then be multiplied by each Participating Individual's number of settlement shares (as weighted) to determine his or her Individual Settlement Payment. *Id*. The Class, Collective, and Class/Collective Notices provided the estimated Individual Settlement Payment and number of Workweeks for each Class Member, assuming full participation in the Settlement. Settlement Agreement, Exhs. A-C. Settlement Award and eligibility determinations are based on employee workweek information that CertifiedSafety provided to the Settlement Administrator; however, Class Members are able to dispute their workweeks by submitting evidence that they worked more workweeks than shown by CertifiedSafety's records. Settlement Agreement, ¶ 4.11.

Settlement Awards will be paid to Class Members by the Settlement Administrator within 30 days after the occurrence of the "Effective Date." Settlement Agreement, ¶ 4.16. Settlement Award checks will remain valid for 180 days from the date of their issuance. Settlement Agreement, ¶ 4.17, as amended. Any funds from checks that are not cashed by the deadline will be redistributed on a *pro rata* basis to Class Members who cash their Individual Settlement Payment checks. *Id*. In the event of a redistribution of uncashed check funds, the additional settlement administration costs related to the redistribution will be deducted from the total amount of uncashed checks prior to the redistribution. *Id*. If the average net recovery from the redistribution

---

[21] Plaintiffs performed an in-depth analysis of Workweek weightings and the underlying state law provisions to develop the weightings. Additionally, Judge Vince Chhabria recently granted final approval of a hybrid FLSA/Rule 23 wage and hour settlement that incorporated a workweek weighting of three for California state law claims and a workweek weighting of two for Washington state law claims, relative to FLSA-only Workweeks. *See Soto, et al. v. O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D. Cal. Oct. 23, 2019).

1   is less than $10 per Participating Individual, or if there are uncashed check funds remaining after

2   the redistribution as described herein, then the amount will revert to Legal Aid at Work as the *cy*

3   *pres* recipient. *Id*. Upon completion of administration of the Settlement, the Settlement

4   Administrator will provide a Post-Distribution Accounting in accordance with the Northern

5   District's Procedural Guidance. Settlement Agreement, ¶ 4.18, as amended.

6               **D.  Scope of Release and Final Judgment**

7           The releases contemplated by the Settlement are dependent upon whether the Participating

8   Individual is an Opt In Plaintiff and/or a Rule 23 Class Member, and are tethered to the factual

9   allegations. Opt In Plaintiffs will release any and all claims under the FLSA based on or arising out

10  of the same factual predicates of the Actions. Settlement Agreement, ¶ 4.19.1. Rule 23 Class

11  Members will release any and all claims under the applicable state law, based on or arising out of

12  the same factual predicates of the Actions, the Complaints, and/or the allegations in the Complaints,

13  including all claims that were or could have been raised in the Actions and any other wage and hour

14  claims for damages, premiums, penalties, interest, attorneys' fees, and equitable relief. Settlement

15  Agreement, ¶¶ 4.19.2-4.19.7. As to Rule 23 Class Members who are not Opt In Plaintiffs, those

16  who negotiate their Rule 23 Settlement Checks will also release any and all claims under the FLSA

17  arising from or related to their work for CertifiedSafety in the applicable Rule 23 state(s), based on

18  these same factual predicates. *Id*. If such a Rule 23 Class Member does not deposit his or her check,

19  he or she will not release any claims under the FLSA. *Id*.

20          The releases are effective upon final approval of the Settlement and issuance of all payments

21  as provided for under the Settlement. Settlement Agreement, ¶ 4.19. The release timing extends

22  through the date of preliminary approval, and the Released Parties are Defendants and their related

23  persons and entities. Settlement Agreement, ¶¶ 4.19.8, 2.37. By its express terms, the release only

24  encompasses claims arising from the refinery's alleged joint employment of a Participating

25  Individual with CertifiedSafety, and does not extend to any claims that may arise from the

26  Participating Individual's direct employment with a refinery Defendant. Settlement Agreement, ¶

27  2.37. The Class Representatives also agree to a general release. Settlement Agreement, ¶ 4.21.

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1

## V.  ARGUMENT

2

### A.  Ninth Circuit Precedent Favors and Encourages Class Settlements

3      A certified class action may not be settled without Court approval. *See* Fed.R.Civ.P. 23(e).

4  Approval of a class action settlement requires three steps: (1) preliminary approval of the proposed

5  settlement upon a written motion; (2) dissemination of notice of the settlement to all class members;

6  and (3) a final settlement approval hearing at which objecting class members may be heard, and at

7  which evidence and argument concerning the fairness, adequacy, and reasonableness of the

8  settlement is presented. Manual for Complex Litigation, *Judicial Role in Reviewing a Proposed*

9  *Class Action Settlement*, § 21.61 (4th ed. 2004). The decision to approve or reject a proposed

10 settlement is committed to the sound discretion of the court. *See Hanlon v. Chrysler Corp.*, 150

11 F.3d 1011, 1027 (9th Cir. 1998). Rule 23 requires that all class action settlements satisfy two

12 primary prerequisites before a court may grant certification for purposes of preliminary approval:

13 (1) that the settlement class meets the requirements for class certification if it has not yet been

14 certified; and (2) that the settlement is fair, reasonable, and adequate. Fed.R.Civ.P. 23(a), (e)(2);

15 *Hanlon*, 150 F.3d at 1020.

16     Federal law strongly favors and encourages settlements, especially in class actions. *See*

17 *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("[T]here is an overriding public

18 interest in settling and quieting litigation. This is particularly true in class action suits."). Moreover,

19 when reviewing a motion for approval of a class settlement, the Court should give due regard to

20 "what is otherwise a private consensual agreement negotiated between the parties," and must

21 therefore limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement

22 is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that

23 the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for*

24 *Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982). The Court of Appeals will rarely

25 overturn approval of a class action settlement unless "the terms of the agreement contain

26 convincing indications that the incentives favoring pursuit of self-interest rather than the class's

27 interests in fact influenced the outcome of the negotiations and that the district court was wrong in

28 concluding otherwise." *Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003).

1    Applying this standard of review to other federal and California wage and hour class

2  actions, this Court and others in this District have previously approved settlements similar to that

3  reached in this case. *See O'Connor v. Uber Techs., Inc.*, No. 13-cv-03826-EMC, 2019 U.S. Dist.

4  LEXIS 157070, at *12 (N.D. Cal. Sep. 13, 2019) (granting final approval of a settlement that

5  included both FLSA and California Labor Code claims); *Viceral v. Mistras Grp., Inc.*, No. 15-cv-

6  02198-EMC, 2017 U.S. Dist. LEXIS 23220, at *2 (N.D. Cal. Feb. 17, 2017) (same); *Soto, et al. v.*

7  *O.C. Communications, Inc., et al.*, Case No. 3:17-cv-00251-VC, ECF 299 at 10:11-14, 305 (N.D.

8  Cal. Oct. 23, 2019) (Chhabria, J.) (same; included both California and Washington Rule 23 Classes,

9  with workweek weighting); *Guilbaud v. Sprint Nextel Corp.*, No. 3:13-CV-04357-VC, 2016 WL

10 7826649, at *1 (N.D. Cal. Apr. 15, 2016). Likewise, in its January 22, 2020 order, the Court already

11 finally approved the Settlement with respect the Collective Members. *See* ECF 216. This Court also

12 conditionally certified the California, Washington, Minnesota, Illinois, Ohio, and Alaska Classes

13 and preliminarily approved the Settlement with respect to these Class Members.[22] *Id.* Accordingly,

14 the only step that remains is final approval of the Settlement as to the California, Washington,

15 Minnesota, Illinois, Ohio, and Alaska Classes. Consistent with the precedent of this Circuit and this

16 Court's own decisions, the Settlement should be finally approved.

17    **B.  The Court Should Finally Approve the Settlement**

18    In deciding whether to approve a proposed class action settlement, the Court must find that

19 the proposed settlement is "fair, reasonable, and adequate." Fed.R.Civ.P. 23(e)(2); *Officers for*

20 *Justice*, 688 F.2d at 625. Included in this analysis are considerations of: (1) the strength of the

21 plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the

22 risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5)

23 the extent of discovery completed and the stage of the proceedings; (6) the experience and views of

24 counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to

25 the proposed settlement. *Churchill Village, LLC. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

26

27 [22] Plaintiffs acknowledge that, in the event that the Settlement is not approved by the Court, class and collective certification would be contested by Defendants, and Defendants fully reserve and do
28 not waive any arguments and challenges regarding the propriety of class and collective action certification.

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

Importantly, courts apply a presumption of fairness "if the settlement is recommended by class counsel after arm's-length bargaining." *Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS, 2011 WL 1230826, at *6 (N.D. Cal. Apr. 1, 2011). There is also "a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). In light of these factors, the Court should find that the Settlement is fair, reasonable, and adequate, and finally approve it as to the California, Washington, Minnesota, Illinois, Ohio, and Alaska Classes.

### 1. The best practicable notice was provided to the Class Members in accordance with the process approved by the Court.

Pursuant to the Court's January 22, 2020 preliminary approval order, Heffler sent the Court-approved Notices of Settlement to the Class Members in accordance with the terms of the Settlement. Cottrell Decl. ¶ 33. The Notices were sent via U.S. Mail, email, and text message, and the Parties created a case website where Class Members can view the Settlement and accompanying court filings. *Id.*

Notice of a class action settlement is adequate where the notice is given in a "form and manner that does not systematically leave an identifiable group without notice." *Mandujano v. Basic Vegetable Products, Inc.*, 541 F.2d 832, 835 (9th Cir. 1976). The notice should be the best "practicable under the circumstances including individual notice to all members who can be identified through reasonable effort." *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1374 (9th Cir. 1993). Sending individual notices to settlement class members' last-known addresses constitutes the requisite effort. *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 121 (8th Cir. 1975); *Langford v. Devitt*, 127 F.R.D. 41, 45 (S.D.N.Y. 1989) ("[N]otice mailed by first class mail has been approved repeatedly as sufficient notice of a proposed settlement.").

The Settlement Administrator followed all of the procedures set forth in the Court-approved notice plan. Reasonable steps have been taken to ensure that all Class Members receive the Notice. *See supra* Section III.G. Ultimately, of the 2,481 notices distributed via U.S. Mail, 81 notices (3.26%) are undeliverable following skip-tracing and other techniques. Cottrell Decl. ¶ 35. Moreover, the dissemination of notice via email and text message in addition to U.S. Mail increases

1  the likelihood that Class Members successfully receive the notice. *Id*. The Notices provided

2  reasonable estimates of Class Members' recovery. Accordingly, the notice process satisfies the

3  "best practicable notice" standard.

2.  **The terms of the Settlement are fair, reasonable, and adequate.**

5      In evaluating the fairness of a proposed settlement, courts compare the settlement amount

6  with the estimated maximum damages recoverable in a successful litigation. *In re Mego Fin. Corp.*

7  *Sec. Litig.,* 213 F.3d 454, 459 (9th Cir. 2000). Courts routinely approve settlements that provide a

8  fraction of the maximum potential recovery. *See, e.g.*, *Officers for Justice*, 688 F.2d at 623; *Vikram*

9  *v. First Student Mgmt., LLC*, No. 17-CV-04656-KAW, 2019 WL 1084169, at *5 (N.D. Cal. Mar. 7,

10  2019) (approving gross settlement amount that represents "30.6% of the California labor law

11  violations and PAGA penalties"); *Viceral*, 2016 WL 5907869, at *7 (Chen, J.) (approving wage and

12  hour settlement which represented 8.1% of the total verdict value).[23] "Even a small percentage of

13  the maximum possible recovery can be a reasonable settlement. Dollar amounts are judged not in

14  comparison with possible recovery in the best of all possible worlds, but rather in light of the

15  strengths and weaknesses of plaintiffs' case." *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D.

16  231, 258 (D. Del. 2002).

17      Thus, it is well-settled that a proposed settlement is not to be measured against a

18  hypothetical ideal result that might have been achieved. *See, e.g.*, *7-Eleven Owners for Fair*

19  *Franchising*, 85 Cal.App.4th 1135, 1150 (2000) (citing *Linney v. Cellular Alaska P'ship,* 151 F.3d

20  1234, 1242 (9th Cir. 1998) with approval). "Notably, [a court must consider whether] a substantial

21  portion of Defendant's total potential liability exposure would not translate into awards to class

22  members at all. . . . [For example, where] the estimated potential liability is comprised of PAGA

23  penalties, [] these large penalties do not necessarily translate into take-home awards for members of

24

25

26  [23] *See also Stovall-Gusman v. W.W. Granger, Inc.*, 2015 WL 3776765, at *4 (N.D. Cal. June 17, 2015) ("10% gross and 7.3% net figures are 'within the range of reasonableness'"); *Balderas v. Massage Envy Franchising, LLP*, 2014 WL 3610945, at *5 (N.D. Cal. July 21, 2014) (gross

27  settlement amount of 8% of maximum recovery and net settlement amount of 5%); *Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4-5 (C.D. Cal. Jan. 31, 2014) (9.1% of "the total value of the

28  action" is within the range of reasonableness).

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1  the class….” *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 256 (N.D. Cal. 2015).

2  Moreover, the Court may consider the defendant's financial resources and ability to pay a larger

3  settlement when deciding whether to approve a class settlement. *See, e.g., Rinky Dink Inc. v. Elec.*

4  *Merch. Sys. Inc.*, No. C13-1347 JCC, 2015 WL 11234156, at *4 (W.D. Wash. Dec. 11, 2015)

5  (considering defendants' ability to pay a larger settlement); *In re Washington Pub. Power Supply*

6  *Sys. Sec. Litig.*, 720 F. Supp. 1379, 1387 (D. Ariz. 1989), *aff'd sub nom. Class Plaintiffs v. City of*

7  *Seattle*, 955 F.2d 1268 (9th Cir. 1992) (analyzing defendant's ability to pay a judgment larger than

8  the amount provided by the proposed settlement in settlement approval context).

9      A review of the Settlement reveals the fairness, reasonableness, and adequacy of its terms.

10  Cottrell Decl. ¶ 60. The Gross Settlement Amount of $6,000,000, resulting in a Net Settlement

11  Amount of approximately $3,757,102.27, will result in fair and just relief to the Class Members. *Id.*

12  The Gross Settlement Amount represents more than 53% of the approximately $11.3 million that

13  Class Counsel have calculated for the core unpaid wage claims. *Id.* ¶ 61. Moreover, the $6,000,000

14  settlement amount represents approximately 13.3% of Defendants' total potential exposure of $45.2

15  million. *Id.*

16      The Settlement provides for an impressive average recovery of $1,514.35 per each of the

17  2,481 Class Members (this amount divides the *net* recovery by total number of Class Members),

18  reflecting an *unweighted* share of $40.97 for Workweek under the Settlement. *Id.* ¶ 62. 68 Class

19  Members will receive in excess of $10,000.00, six Class Members will receive over $20,000, and

20  the largest recovery is $26,205.20. *Id.* These results are well within the reasonable standard when

21  considering the difficulty and risks presented by pursuing further litigation. *Id.* The final settlement

22  amount takes into account the substantial risks inherent in any class action wage-and hour case, as

23  well as the procedural posture of the Actions and the specific defenses asserted by Defendants,

24  many of which are unique to this case. *Id.* ¶ 63*; See Officers for Justice*, 688 F.2d at 623.

25      **3. The Parties have agreed to distribute settlement proceeds tailored to the Classes and Collective and their respective claims.**

26

27      In an effort to ensure fairness, the Parties have agreed to allocate the settlement proceeds

28  amongst Class Members in a manner that recognizes that amount of time that the particular Class

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

Member worked for Defendants in the applicable limitations period. The allocation method, which is based on the number of Workweeks, will ensure that longer-tenured workers receive a greater recovery. Moreover, the allocation tracks the differences in substantive law and penalty claims by weighting the Workweek shares more heavily for work performed in California, Washington, Minnesota, Illinois, Ohio, and Alaska. Cottrell Decl. ¶ 64. The allocation was made based on Class Counsel's assessment to ensure that employees are compensated accordingly and in the most equitable manner. *Id*. To the extent that any Class Member is *both* a FLSA Opt In Plaintiff and a member of a Rule 23 Class, these workers will only receive a recovery based on their workweeks as a Rule 23 Class Member for their work in California, Washington, Minnesota, Illinois, Ohio, and Alaska. *Id*. ¶ 65. Such workers will not receive a "double recovery."

A class action settlement need not benefit all class members equally. *Holmes v. Continental Can Co.,* 706 F.2d 1144, 1148 (11th Cir. 1983); *In re AT & T Mobility Wireless Data Services Sales Tax Litigation,* 789 F.Supp.2d 935, 979–80, 2011 WL 2204584 at *42 (N.D. Ill. 2011). Rather, although disparities in the treatment of class and collective members may raise an inference of unfairness and/or inadequate representation, this inference can be rebutted by showing that the unequal allocations are based on legitimate considerations. *Holmes,* 706 F.2d at 1148; *In re AT & T,* 789 F.Supp.2d at 979–80, 2011 WL 2204584 at *42. Plaintiffs provide rational and legitimate bases for the allocation method here, and the Parties submit that it should be approved by the Court.

### 4. The extensive discovery enabled the Parties to make informed decisions regarding settlement.

The amount of discovery completed prior to reaching a settlement is important because it bears on whether the Parties and the Court have sufficient information before them to assess the merits of the claims. *See, e.g.*, *Boyd v. Bechtel Corp.*, 485 F.Supp. 610, 617, 625 (N.D. Cal. 1979); *Lewis v. Starbucks Corp.*, No. 2:07-cv-00490-MCE-DAD, 2008 WL 4196690, at *6 (E.D. Cal. Sept. 11, 2008). Informal discovery may also assist parties with "form[ing] a clear view of the strengths and weaknesses of their cases." *Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443, 454 (E.D. Cal. 2013).

The Parties engaged in extensive informal discovery, depositions, and hundreds of class outreach interviews that have enabled both sides to assess the claims and potential defenses in this

action. Cottrell Decl. ¶¶ 17-22, 66. The Parties were able to accurately assess the legal and factual

issues that would arise if the cases proceeded to trial(s). *Id.* ¶ 66. In addition, in reaching this

Settlement, Plaintiffs' counsel relied on their substantial litigation experience in similar wage and

hour class and collective actions. Cottrell Decl. ¶¶ 5-7, 67; Plaintiffs' counsel's liability and

damages evaluation was premised on a careful and extensive analysis of the effects of Defendants'

compensation policies and practices on Class Members' pay. *Id.* ¶ 68. Ultimately, facilitated by

mediator Paul Grossman, the Parties used this information and discovery to fairly resolve the

litigation. *Id.* ¶ 69.

### 5. While Plaintiffs recognize the strength of their claims, there are substantial risks in proceeding with the litigation.

"Settlement avoids the complexity, delay, risk and expense of continuing with the litigation

and will produce a prompt, certain, and substantial recovery for the Plaintiff class." *Eddings v.*

*Health Net, Inc.*, No. CV 10-1744-JST RZX, 2013 WL 3013867, at *3 (C.D. Cal. June 13, 2013).

The monetary value of the proposed Settlement represents a fair compromise given the risks and

uncertainties posed by continued litigation. Cottrell Decl. ¶ 70. If the Actions were to go to trial(s)

as class and collective actions (which Defendants would vigorously oppose if this Settlement

Agreement were not approved), Class Counsel estimates that fees and costs would exceed

$5,000,000. *Id.* ¶ 71. Litigating the class and collective action claims would require substantial

additional preparation and discovery. *Id.* It would require depositions of experts, the presentation of

percipient and expert witnesses at trial, as well as the consideration, preparation, and presentation of

voluminous documentary evidence and the preparation and analysis of expert reports. *Id.*

Recovery of the damages and penalties previously referenced would also require complete

success and certification of all of Plaintiffs' claims, an uncertain feat in light of developments in

wage and hour and class and collective action law as well as the legal and factual grounds that

Defendants have asserted to defend this action. *Id.* ¶ 72. While Plaintiffs are confident in their

ability to certify and successfully litigate the alleged claims on the merits, Plaintiffs assert no less

than six putative Rule 23 Classes, along with a FLSA Collective. Off-the-clock claims are difficult

to certify for class treatment, given that the nature, cause, and amount of the off-the-clock work

1    may vary based on the individualized circumstances of the worker. *See, e.g., In re AutoZone, Inc.,*

2    *Wage & Hour Employment Practices Litig.*, 289 F.R.D. 526, 539 (N.D. Cal. 2012), aff'd, No. 17-

3    17533, 2019 WL 4898684 (9th Cir. Oct. 4, 2019); *Kilbourne v. Coca-Cola Co.*, No. 14CV984-

4    MMA BGS, 2015 WL 5117080, at *14 (S.D. Cal. July 29, 2015); *York v. Starbucks Corp.*, No. CV

5    08-07919 GAF PJWX, 2011 WL 8199987, at *30 (C.D. Cal. Nov. 23, 2011).

6        Moreover, Plaintiffs considered the risk that the Court would, in the end, decline to find the

7    refinery Defendants liable as a joint employer. *Id.,* ¶ 75. Though CertifiedSafety would still be

8    liable in the event of a favorable outcome for Plaintiffs, a finding that the refinery Defendants are

9    joint employers would ensure that the Class Members would be able to obtain full recovery,

10   particularly in the event of a large award.[24] *Id.* Though Plaintiffs have filed pleadings alleging

11   claims of liability against refinery Defendants on a joint employer basis, the issue would be heavily

12   contested at summary judgment and/or trial(s). *Id.* If refinery Defendants are found not to be a joint

13   employer, the value of the case would be lessened, and Plaintiffs had to consider this risk. *Id.*

14       In contrast to litigating this suit, resolving this case by means of the Settlement will yield a

15   prompt, certain, and very substantial recovery for the Class Members. Cottrell Decl. ¶ 76. Such a

16   result will benefit the Parties and the court system. *Id.* It will bring finality to over three years of

17   arduous litigation and eight separate Actions, and will foreclose the possibility of expanding

18   litigation.

19           **6.    The settlement is the product of informed, non-collusive, and arm's-
                    length negotiations between experienced counsel.**

20       Courts routinely presume a settlement is fair where it is reached through arm's-length

21   bargaining. *See Hanlon*, 150 F.3d at 1027; *Wren*, 2011 WL 1230826, at *14. Furthermore, where

22   counsel are well-qualified to represent the proposed class and collective in a settlement based on

23   their extensive class and collective action experience and familiarity with the strengths and

24   weaknesses of the action, courts find this factor to support a finding of fairness. *Wren*, 2011 WL

25   1230826, at *10; *Carter v. Anderson Merchandisers, LP*, No. EDCV 08-0025-VAP OPX, 2010 WL

26

27   ---
     [24] *See, e.g., Am. Motorcycle Assn. v. Superior Court*, 20 Cal.3d 578, 590 (1978) (joint and several

28   liability permits an injured person to obtain full recovery even when one or more of the responsible
     parties do not have the financial resources to cover their liability).

1  1946784, at *8 (C.D. Cal. May 11, 2010) ("Counsel's opinion is accorded considerable weight.").

2  Here, the settlement was a product of non-collusive, arm's-length negotiations. Cottrell

3  Decl. ¶ 77. The Parties participated in two mediations. The second mediation before Paul

4  Grossman, who is a skilled mediator with many years of experience mediating employment matters,

5  was a lengthy session that lasted well into the night. *Id.* The Parties then spent several months

6  negotiating the long form settlement agreement, with several rounds of meet and confer and

7  correspondence related to the terms and details of the Settlement. *Id.* ¶ 78. Plaintiffs are represented

8  by experienced and respected litigators of representative wage and hour actions, and these attorneys

9  feel strongly that the proposed Settlement achieves an exceptional result for the Class Members. *Id.*

10  ¶ 79.

11  ### 7.  Class Members approve of the Settlement.

12  The Ninth Circuit and other federal courts have made clear that the number or percentage of

13  class members who object to or opt out of the settlement is a factor of great significance. *See*

14  *Mandujano*, 541 F.2d at 837; *see also In re Am. Bank Note Holographics, Inc.*, 127 F.Supp.2d 418,

15  425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the

16  most significant factor to be weighed in considering its adequacy."). Courts have found that a

17  relatively low percentage of objectors or opt outs is a very strong sign of fairness that factors heavily

18  in favor of approval. *See, e.g., Cody v. Hillard*, 88 F.Supp.2d 1049, 1059-60 (D.S.D. 2000) (approving

19  the settlement in large part because only 3% of the apparent class had objected to the settlement).

20  To date, no Class Members have objected to the Settlement, and no Class Members have

21  opted out of the Settlement. *See* Cottrell Decl. ¶ 80. In addition, all seven Class Representatives

22  support the terms of the Settlement. *Id.*; *see also* Declarations of Plaintiffs in Support of Service

23  Awards. This shows widespread support for the Settlement among Class Members, and gives rise to

24  a presumption of fairness.

25  ### C.  The Class Representative Service Awards are Reasonable

26  In approving the Settlement, the Court must determine whether "the settlement, taken as a

27  whole, is fair, reasonable and adequate to all concerned." *Officers for Justice*, 688 F.2d at 625. In

28  addition to the terms and details of the Settlement discussed above, the Settlement also establishes

1  service awards of up to $15,000 for Plaintiffs Jones, Knight, and Crummie; up to $10,000 for

2  Plaintiffs Ross and East; and up to $5,000 for Plaintiffs Azevedo and Turner. Plaintiffs set forth

3  their arguments in support of the service awards in full in their accompanying Motion for an Award

4  of Attorneys' Fees and Costs and for Service Awards. Plaintiffs do not repeat those arguments here.

5  The Court should grant final approval to the requested service awards as reasonable.

### D.  The Requested Attorneys' Fees and Costs are Reasonable

7         Likewise in evaluating the Settlement, the Court should evaluate Plaintiffs' request for

8  attorneys' fees and costs pursuant to the terms of the Settlement. In their fee motion, Class Counsel

9  request one-third of the Gross Settlement Amount, for a total of $2,000,000, plus reimbursement of

10  litigation costs of $60,397.73. Cottrell Decl. ¶ 40. Plaintiffs set forth their arguments in support of

11  the fee and costs request in full in their accompanying Motion for an Award of Attorneys' Fees and

12  Costs and for Service Awards. Plaintiffs do not repeat those arguments here. The Court should grant

13  final approval to the requested fees and costs as reasonable.

### E.  The Court Should Finally Certify the California, Washington, Illinois, Minnesota, Alaska, and Ohio Classes[25]

16         In its January 22, 2020 Preliminary Approval Order, the Court granted conditional

17  certification of the provisional California and Washington Classes. ECF 296. Now that notice has

18  been effectuated, the Court should finally certify these classes in its Final Approval Order. The

---

[25] With regards to the Collective, this Court has already granted "Approval of the terms and conditions contained in the Amended Settlement as to the Collective of Opt In Plaintiffs" and found that "the terms of the Settlement are within the range of possible approval, pursuant to the Fair Labor Standards Act and applicable law." ECF 216, ¶ 4. In its prior October 24, 2017 Order, the Court found that Plaintiffs have satisfied their burden of making substantial allegations that Safety Attendants were subject to a common practice or policy that violated the FLSA. ECF 48. In final certification of an FLSA collective, the court makes a determination about whether the plaintiffs are similarly situated by weighing such factors as "(1) the disparate factual and employment settings of the individual plaintiffs, (2) the various defenses available to the defendant which appeared to be individual to each plaintiff, and (3) fairness and procedural considerations. *See Murillo v. Pacific Gas & Elec. Co.*, 266 F.R.D. 468 (E.D. Cal. 2010) The same rationale for approving the Collective at preliminary approval applies here, including, as set forth in Section E, that Class Members are all Safety Attendants with common issues, that defenses are not individualized, and that the purposes of the FSLA are carried out by providing Collective Members with certain settlement awards for unpaid wages alleged to be owed. To the extent not already granted, the Court should confirm final certification of the Collective.

California and Washington Classes meet all of the requirements for final approval as set forth below

### 1. The Classes are numerous and ascertainable.

First, the numerosity prerequisite demands that a class be large enough that joinder of all members would be impracticable. Fed.R.Civ.P. 23(a)(1). While there is no exact numerical cut-off, courts have routinely found numerosity satisfied with classes of at least forty members. *See, e.g., Ikonen v. Hartz Mountain Corp.*, 122 F.R.D. 258, 262 (S.D. Cal. 1988); *Romero v. Producers Dairy Foods, Inc.*, 235 F.R.D. 474, 485 (E.D. Cal. 2006). The approximately 1,896 members of the California Class, 706 members of the Washington Class, 257 members of the Minnesota Class, 96 members of the Illinois class, 220 members of the Ohio class, and 58 members of the Alaska class render each class so large as to make joinder impracticable. Cottrell Decl. ¶ 81.

### 2. Plaintiffs' claims raise common issues of fact or law.

The commonality requirement of Rule 23(a)(2) "is met if there is at least one common question or law or fact." *Fry v. Hayt, Hayt & Landau*, 198 F.R.D. 461, 467 (E.D. Pa. 2000). Plaintiffs "need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013). "[E]ven a single common question" can satisfy the commonality requirement of Rule 23(a)(2). *Id*.

Plaintiffs contend that common questions of law and fact predominate here, satisfying paragraphs (a)(2) and (b)(3) of Rule 23, as alleged in the operative complaints. Cottrell Decl. ¶ 82. Defendants have uniform policies applicable to all Safety Attendants. *Id*. ¶ 83. Specifically, Plaintiffs allege that Safety Attendants all perform essentially the same job duties—performing safety duties pursuant to Defendants' standards and requirements. Plaintiffs allege that the wage and hour violations are in large measure borne of CertifiedSafety's relationship with the refineries and the standardized policies, practices, and procedures that the refineries impose, creating pervasive issues of fact and law that are amenable to resolution on a class-wide basis. In particular, Safety Attendants are subject to the same: hiring and training process; timekeeping, payroll, and compensation policies; meal and rest period policies and practices; and reimbursement policies. *Id*. Plaintiffs' other derivative claims will rise or fall with the primary claims. *Id*. Because these

questions can be resolved at the same juncture, Plaintiffs contend the commonality requirement is satisfied for the Classes. *Id.*

### 3. Plaintiffs' claims are typical of the claims of the Classes.

"Rule 23(a)(3) requires that the claims of the named parties be typical of the claims of the members of the class." *Fry*, 198 F.R.D. at 468. "Under the rule's permissive standards, a representative's claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Hanlon*, 150 F.3d at 1020. Here, Plaintiffs contend that their claims are typical of those of all other Class Members. Cottrell Decl. ¶ 85. They were subject to the alleged illegal policies and practices that form the basis of the claims asserted in this case. *Id.* Interviews with Class Members and review of timekeeping and payroll data confirm that the employees throughout the United States were subjected to the same alleged illegal policies and practices to which Plaintiffs were subjected. *Id.* ¶ 86. Thus, the typicality requirement is also satisfied. *Id.*

### 4. Plaintiffs and Class Counsel will adequately represent the Classes.

To meet the adequacy of representation requirement in Rule 23(a)(4), Plaintiffs must show "(1) that the putative named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) that he or she has obtained adequate counsel, and (3) that there is no conflict between the individual's claims and those asserted on behalf of the class." *Fry*, 198 F.R.D. at 469. Plaintiffs' claims are in line with the claims of the Classes, and Plaintiffs' claims are not antagonistic to the claims of Class Members. Cottrell Decl. ¶ 87. Plaintiffs have prosecuted this case with the interests of the Class Members in mind. *Id.* Moreover, Plaintiffs' counsel has extensive experience in class action and employment litigation, including wage and hour class actions, and do not have any conflict with the Classes. *Id.* ¶¶ 5-7, 88.

### 5. The Rule 23(b)(3) requirements for class certification are also met.

Under Rule 23(b)(3), Plaintiffs must demonstrate that common questions "predominate over any questions affecting only individual members" and that a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." "The predominance analysis under Rule 23(b)(3) focuses on 'the relationship between the common and individual

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1  issues' in the case and 'tests whether proposed classes are sufficiently cohesive to warrant

2  adjudication by representation.'" *Wang,* 737 F.3d at 545.

3      Plaintiffs contend the common questions raised in this action predominate over any

4  individualized questions concerning the Classes. Cottrell Decl. ¶ 89. The Classes are entirely

5  cohesive because resolution of Plaintiffs' claims hinge on the uniform policies and practices of

6  Defendants, rather than the treatment the Class Members experienced on an individual level. *Id.* If

7  the Class Members proceeded on their claims as individuals, their many individual suits would

8  require duplicative discovery and duplicative litigation, and each Class Member would have to

9  personally participate in the litigation effort to an extent that would never be required in a class

10 proceeding. *Id.* Thus, Plaintiffs contend that the class action mechanism would efficiently resolve

11 numerous substantially identical claims at the same time while avoiding a waste of judicial

12 resources and eliminating the possibility of conflicting decisions from repetitious litigation and

13 arbitrations. *Id.* The class action mechanism, therefore, is a superior method of adjudication

14 compared to a multitude of individual suits. Cottrell Decl. ¶ 90.

15     The issues raised by the present case are much better handled collectively by way of a

16 settlement. *Id.* ¶ 92. Manageability is not a concern in the settlement context. *Amchem Prod., Inc. v.*

17 *Windsor*, 521 U.S. 591, 593 (1997). The Settlement presented by the Parties provides finality,

18 ensures that workers receive redress for their relatively modest claims, and avoids clogging the

19 legal system with numerous cases. Cottrell Decl. ¶ 93. Accordingly, class treatment is efficient and

20 warranted, and the Court should conditionally finally certify the California, Washington,

21 Minnesota, Illinois, Ohio, and Alaska Classes for settlement purposes.

22     **VI. CONCLUSION**

23     For the foregoing reasons, Plaintiffs respectfully request that this Court grant this Motion for

24 final approval and enter the accompanying proposed Order.

25     //

26     //

27     //

28     //

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1

2  Date: April 23, 2020                          Respectfully submitted,

3

4                                                */s/ Carolyn Hunt Cottrell*
                                                 Carolyn Hunt Cottrell
5                                                David C. Leimbach
                                                 Michelle S. Lim
6                                                Scott L. Gordon
                                                 SCHNEIDER WALLACE
7                                                COTTRELL KONECKY LLP

8
                                                 Attorneys for Plaintiffs and the Settlement Classes and
9                                                Collective

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC

1

## CERTIFICATE OF SERVICE

2          I hereby certify that I electronically filed the foregoing document with the Clerk of the Court

3   for the United States District Court, Northern District of California, by using the Court's CM/ECF

4   system on April 23, 2020.

5          I certify that all participants in the case are registered CM/ECF users and that service will be

6   accomplished by the Court's CM/ECF system.

7   Dated: April 23, 2020                         /s/ *Carolyn Hunt Cottrell*
                                                    Carolyn Hunt Cottrell
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE
ACTION SETTLEMENT
*Jones, et al. v. CertifiedSafety, Inc.*; Lead Case No. 3:17-cv-02229-EMC